Good morning, Your Honors, and may it please the Court, Christopher Banas for the Plaintiff Ixchel. We have four issues, it seems to me, maybe three, depending on how you break up the 1,600 arguments to discuss today. The first, and I think most legally interesting, is the tortious interference with contract claim, and whether or not, in the context of an at-will contract, a plaintiff in California under California law must plead an independent wrongful act. Our position is that the California Supreme Court has already spoken on this issue in the PG&E case, where it laid out the basic rule and cited multiple authorities for the fact that a contract terminable at will is not terminable at the will of a third party, but only terminable at the will of parties. That establishes a baseline, and from there, there was an interesting case in Reeves, where they were faced with a different issue, and that issue was, what do you do in the context of an employment situation, where an employee is lured away, and California has a robust regime of regulatory and legal standards for employment, and so there's a conflict there between the ancient tort of interference with contract and California's policy and regulatory and legal scheme. But there's more recent case law, it goes right to this point, I'm just watching your time for you, and so we could get to it, but, right, and that kind of puts that issue to bed, doesn't it? It does. Both the Redfern and Popescu Court of Appeals cases expressly limit Reeves to its facts of employment. So Opposing Counsel says, we should not believe what Popescu and Redfern have said, because the California Supreme Court would not take that approach. Well, I don't know what evidence they have for that, Your Honor, but I don't believe they have any, but we do have some that would contradict what Opposing Counsel says. There is some suggestion, and if you go back to Reeves, and I recognize it's the first, and you've got these more recent cases that are limiting, but it relies on the restatement, which isn't so limited, there is that. It relies on the restatement in discussing how to resolve the tension, and so it uses that language as it's part of its resolution of that particular tension, but it is limited to that circumstance. In fact, Redfern was appealed up to the California Supreme Court, and they denied certiorari, they didn't take the case, and so that, this Court has found, is additional evidence that the Supreme Court of California agreed with the lower court. And so, Paul, go ahead. I'm sorry, please finish. I was going to say, all of the evidence that we have from the record of cases points to the ancient tort is what it always has been, except in the context of employees, and I'll point out, too, that in Popescu, it shows just how limited the Courts of Appeal of California think it is. There, they even limited it so that an employer could be sued. So really, Reeves is limited just to employees. It's not even just the employee context itself. And so, we think that's very clear. Sure. Could I ask you about the other claim on intentional interference with prospective economic advantage? Because there, there's no dispute that there does have to be an allegation of an independently wrongful act. Correct. And if I'm understanding correctly, the argument is that the section 2.13 of the agreement violated 16600. Is that correct, as the independently wrongful act? Yes, ma'am. There are not cases applying it to corporations so far. They're all applying it to the employer-employee context, not to contracts between corporations. So we don't have any evidence that California courts would apply it to a business deal. And my concern is that, given how broadly the California courts and we have interpreted the scope of 16600, what would be the effect of a ruling applying that to corporations, which I take it is what you have to seek in order to find the intentional interference with prospective economic advantage? I think that you're right. And I think it is an interesting question. But this Court has already found that the statute was intended to be quite broad. But that always applied it in the covenant not to compete on an employee, although we were clear that wasn't limited to that context. But we haven't extended it beyond that context. And I haven't found a case, I agree with you. The statute itself, though, does say every contract by which anyone is restrained from engaging in profession, trade, or business, that should rightly be read to include corporations as legal persons. So in the antitrust context, we've interpreted, or the Supreme Court has interpreted, similar language, very broad language, very narrowly, so as to avoid saying every contract from now on is illegal. So what is the limiting principle in California? What would it be? The limiting principle in California is the restraint of business that 16600 contemplates. So if you prevent, substantially prevent me from engaging in business, you have violated 16600 in that. Let's say an exclusive, all exclusive dealing contracts would be illegal in California. Well, I'm not sure that's true. Because I'm not sure that's a substantial restraint if voluntarily entered. Here what we have is. In the covenant not to compete context, any, virtually anything other than, I think it's having to pay back the cost of a seminar is deemed to be a restraint under 16600 and unlawful. So why wouldn't every exclusive dealing contract then be unlawful? Well, in that context, I would say because the business is continuing, there's not a substantial restraint on that business because the parties have agreed to continue doing business just in a certain fashion here. Sounds like our narrow restraint test that we determined was overruled by California Supreme Court Edwards. Yes, Edward did overrule that. Okay, so is this a question we should certify to the California Supreme Court? Whether 16600 applies to corporations, and if so, to what extent? That would be one way to go, obviously. It would take a while to find out the answer. I would say that we do have evidence in the statute, and here, if we look at the facts we have in this case, it is not the case of an exclusive dealing relationship. This is a case of you may not do this business anymore, and if we look at the facts as alleged, that's exactly what happened. Only with one company, so it was very narrow, right? Basically, Biogen wasn't able to work with your client, so it's very narrow. That is the basis of the tortious interference claim, but on the prospective business advantage claim, we allege as an independent wrong restraining Forward from doing any DMF development, which was Forward's entire business, so in other words, we'll pay you a billion plus dollars to not be in this market at all anymore, and so what did that do? That removed an entire player from a competitive marketplace. There was not an exclusive dealing. It was a get out of here in exchange for cash, and to me, that's a very different fact pattern than, hey, let's do an exclusive business deal together. Did you want to save some time? I do, so why don't I, I'll do that. Thank you. May it please the Court. Mark Popofsky on behalf of Biogen. I'd like to start with the 1600 issue and just clean up two issues that the panel asked about. It was asked if there are cases between corporations involving 1600. There certainly are. Dayton Timelock v. Silent Watchmen, California Court of Appeals, 1975, between corporations. BDH v. San Diego, 2015, Northern District, between corporations. Mockham v. Infineon, 2016, between corporations. I'll apply the antitrust standard when applying 1600 to restraints between corporations. I think, Judge Okuda, you got our argument there. I do want to clean up what also was just said about the nature of Section 2.13. As the district court recognized, it is not a get out of this business forward restriction. It says on its plain language, as the district court observed, forward do not engage in third party development agreements involving DMF, but you may still self-develop. That is why, as the district court said, Section 3.01 of the license has ways that forward can still work with third parties to self-develop. It is a narrow ancillary restraint for an obvious reason. Biogen bought freedom to operate for the $1.2 billion. It wanted the licenses to allow Tecfidera to go to market free of forward's patents. That's what Ixchel alleged in paragraph 43 of the second amended complaint. But if we apply the very broad test that the California court and we have indicated in the covenant not to compete context, it's hard for me to see why this wouldn't constitute a restraint that's not permitted by 16600. Because it's a fair thing. We agree with you, Judge Acuda, that the restraint of substantial character test is a very low bar. The Golden II panel on which you sat said so. There are cases where chicken suits have been invalidated. But that's not the right test here. It is the antitrust rule of reason, as Dayton Timelock said, when you have a restraint between corporations. But we don't know, do we know what the California Supreme Court would do after Edwards. Because we said it's not limited to the covenant not to compete. We don't know whether the rule of reason test applies after Edward. There's no case, there's no California Supreme Court has not spoken on this. Certainly not after Edwards, Your Honor. That is correct. But we think the line of cases from Great Western, when the California Supreme Court did speak on this, through the 2016 cases I mentioned, are clear. Those are the business to business cases. Those apply the antitrust standard. One could certify, but we think it's clear that in this pronged II setting, it is the antitrust rule of reason that applies. And think about the implications if it doesn't. So we – I am thinking about them. But so we're taking the language of 16600 and say the California Supreme Court would read it one way in a covenant not to compete and the exact same language in a completely different way between two corporations. Is that something that the California Supreme Court has been receptive to? Do they – would they interpret the same statute to mean different things depending on the parties? I don't think it would have to, Your Honor. The words in the statute are profession or business. They could decide that when it's restraints between companies as to what they could do, that's about business. And when it's, as Golden II and Edwards said, a restraint on professional practice, what people can do, that's about profession. And the Edwards court dropped a very important footnote that said, Circumstancers beyond the employment context, profession, are not before us in sight of a patent licensing case, which this is. So I think, yes, the California Supreme Court would do that. And the implications are self-evident. A Chrysler dealer under Ixchel's rule could not ask – Chrysler could not ask its dealers to take all its models. The dealer could say that's a restraint of substantial character. It's too low a bar for business-to-business restraints, Your Honor. I'd like to move on to the tortious interference with contract issue, because I do not think it is one that has been at all put to bed. There are two lines of cases out there which are very distinct fact patterns from this one. One is the Popescu line of cases, where one party goes out to another and sabotages a relationship without establishing a new one of its own, and the other is the Red Fern Teague situation, where one party disintermediates the plaintiff so it can directly deal with another instead of the intermediary. Ixchel's position cannot be right that outside of those circumstances, wrongful means could never be required, because you can never have parties vie for suppliers or customers. I think they may not be right, but I don't know why we wouldn't certify this question. It just strikes me that there's really long, potentially significant long-reaching consequences in both of these questions. This Court in Lenhoff, Your Honor, decided not to certify and essentially had the same issue there. It was vying for a customer relationship. We didn't get it resolved, did we? I mean, here we are. And it just strikes me that these are going to continue. We have Silicon Valley in California. It strikes me that there are going to be long-reaching consequences. I just wanted to give you an opportunity to tell me why we should certify this question. It is certainly an option for the panel. My understanding is about a 50-to-50 rate of whether the Court will do it. This Court does it one or two times a year. I think the law is going to be a lot more than one or two times a year. But it does strike me that in the interest of comedy and also in getting the answer resolved, because, of course, we don't really do that here. Even if we give you a ruling, we would resolve your dispute, but not the larger picture. I understand, Your Honor. You're not wild about having us you don't want to wait either. Is that it? We don't think it's necessary to wait. We're not opposed to certify if the Court feels it needs the guidance. I do want to spell out in my remaining time the implications of why Ixchel's position. Or it feels it needs the guidance. You mean if we feel that we need the guidance? If you feel you need the guidance. I think the restatement that Your Honor mentioned is the key here. It makes clear that you have to protect buying for relationships when relationships are contestable. Under Ixchel's proposed reading of tortious interference with contract, a firm would have to wait around for a potential supplier or customer to see the light and decide it wants to deal with that company and not a rival or any other company where there's any relationship. That can't be the law. It must be that a party like Biogen can go out and say to a party like Forward, be our licensor. And because we're buying freedom to operate, we don't want you to develop IP with someone else that you could enforce, which is what the collaboration agreement that was outlined is before the Court says. Sotomayor, is that a restraint of substantial character? No, Your Honor. I don't believe it is for a couple of reasons. It is on the part of the person who gets restrained. It's very substantial. They're liable to lose a lot of business. We understand that the substantial restraint bar is low, and that's, of course, a 16600 issue. But I would submit here, even if the test is restraint of substantial character, there was no substantial restraint here for the same reason there's no Article III standing, which is Forward decided to pull the plug on its own after it lost a case that was not settled between the parties. And that's what they admit in paragraph 63 of their complaint. So all the injuries that are asserted, which flow assertedly from the Forward termination, would have happened anyway. Forward elected to pull out of U.S. drug development, and it would have pulled the plug. They have two responses to that, Your Honor. One, that Forward lied when it told the world that why it was pulling the plug. That's fraud by another name, and they don't meet 9b. The Vest case says you don't have to call it fraud for it to be fraud. The allegation in paragraph 63 is they told their shareholders a lie. You've got to plead that by fraud. And their second contention is it's not independent of what they challenge, because the patent license had a royalty bet that depended on the outcome of that unsettled litigation. But that's a sleight of hand. They don't challenge the whole license. They recognize in paragraph 43 it was legitimate to buy freedom to operate for the $1.2 billion. They challenge only paragraph 2.13. And there's no allegation that has any factual basis that Forward pulled out after losing the unsettled interference because of section 2.13. So on that ground, Your Honor, there's no Article III injury. There's an intervening cause. And for that reason, there's no restraint of any substantial character. If there are no further questions, I'd like to yield the balance of my time. Thank you. We have your argument. You have some time for rebuttal. Thank you, Your Honor. Not to be too cheeky, but I'd much rather have certification to the California Supreme Court than to lose. That's what people usually indicate when we say, do you want to sort of rather winking like, well, if it's that or lose, I don't mean to imply that anybody winked today. Well, but we do see some other support in the statute. I want to hit very briefly, if you look at the subsections that come after 16-600, they do discuss partnerships and limited liability company sales. There is support in the statute, we think, for the idea that this applies beyond just the employment context. We heard a lot from opposing counsel on characterizations of our allegations, on arguments about facts and what's in the contract. A lot of these things are inappropriate for the 12B setting that we're in now. Our allegations are that Forward terminated the contract and was restrained from trade because of the payment. We don't allege fraud. So that, to me, is a red herring. The idea of self-development is not in our allegations. We allege the opposite, that Forward was restrained. And in terms of Article III standing, I mean, we've alleged at the pleading stage plenty of different types of harm. So we don't understand that argument. Any other questions? Apparently not. Okay. Thank you very much. The case of Ixchel Pharma LLC versus Biogen is submitted.
judges: Wallace, Ikuta, Christen